MARTIRIÁN FUNTANÉ, demandante y apelante, *v.* JOEL GOLDBERG, dueño o manager de THE CONEY ISLAND AMUSEMENT SHOWS, demandado y apelado.

No. 3589.—*Visto:* Mayo 7, 1925. *Resuelto:* Marzo 12, 1926.

1. ALEGACIONES—CUESTIONES EN CONTROVERSIA (*Issues*), PRUEBAS E INCONGRUENCIAS (*Variance*)—DE LAS PRUEBAS—SU ADMISIBILIDAD BAJO LAS ALEGACIONES—CUESTIONES EN ISSUE.—Demandada una persona como dueño o representante de una empresa y negada por dicha persona la condición de dueño, prueba al efecto de que el demandado no era tal dueño es admisible en evidencia.

2. PARTES—NUEVAS PARTES Y CAMBIO DE PARTES—DE LAS NUEVAS PARTES—OBLIGACIÓN DEL TRIBUNAL A TRAERLAS.—El artículo 74 del Código de Enjuiciamiento Civil no puede interpretarse en el sentido de permitir al deman-

d do, so pretexto de incluir partes adicionales, comenzar una nueva acción cuando hubiera fracasado enteramente en la primera por no haber presentado una buena causa de acción contra el demandado original.

3. Partes—Nuevas Partes y Cambio de Partes—De las Nuevas Partes—Obligación del Tribunal a Traerlas.—Ejercitada acción contra una persona como dueño o representante de una empresa, si apareciere en el juicio que dicha persona no era dueña ni tenía poder para asumir la representación del verdadero responsable, el dueño, la corte sentenciadora no está obligada a traer como parte demandada al verdadero dueño.

4. Principal y Agente—Derechos y Responsabilidades con Respecto a Terceras Personas—Actos Ilegales o no Autorizados—Negligencia o Actos Ilegales de los Agentes y sus Empleados.—Si bien un sirviente o agente es personalmente responsable de un acto que real o presuntivamente él sabe es tortícero, no es responsable por daños causados a un tercero por la mera omisión de cumplir debidamente un deber impuéstole por su patrono.

Sentencia de *Gabriel Castejón,* J. (Guayama), declarando sin lugar demanda sobre daños y perjuicios, con costas. *Confirmada.*

*C. Domínguez Rubio,* abogado del apelante; *M. A. Martínez Dávila,* abogado del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Martirián Funtané demandó a Joel Goldberg en reclamación de daños y perjuicios. Alegó en su demanda que el 5 de junio de 1924 el demandado, "dueño o representante de un espectáculo conocido con el nombre de *Coney Island,* integrado por dos aparatos, una estrella giratoria y un carrusel," abrió dicho espectáculo al público; que el demandante, previo pago, montó en un caballito del carrusel, y que puesto el carrusel en movimiento, el caballito en que montaba "se desprendió de un artefacto, muelle, resorte o de algo que el demandante no puede decir con certeza" y el demandante fué lanzado a tierra recibiendo los golpes que le ocasionaron daños y perjuicios cuyo valor estima en mil dólares.

.El demandado contestó negando que fuera dueño del espectáculo y que sus aparatos estuvieran bajo su control. Negó además que los hechos hubieran ocurrido en la forma alegada por el demandante y como materia nueva de oposición a la demanda alegó que si el demandante sufrió la caída de que se trata se debió "únicamente a su inexperien-

cia y a su negligencia, al estar tratando de hacer piruetas para demostrar ante el público su habilidad de jinete, y que a no ser por la negligencia del demandante . . . . no hubiera ocurrido el accidente.''

Fué el pleito a juicio. Se practicó prueba sobre todos los extremos de la demanda y contestación y finalmente la corte dictó sentencia declarando la demanda sin lugar con costas al demandante. No conforme éste interpuso el presente recurso de apelación.

Como hemos visto, el demandado negó que fuera dueño del espectáculo y que tuviera bajo su control sus aparatos. Llamado a declarar como testigo por el demandante, se expresó así:

"Que se llama Joel Golberg, conoce al Sr. Girod: estuvo en Guayama en el mes de junio de este año; concurrió a la Alcaldía, al Municipio a pagar algunos derechos para un espectáculo que se llamaba *Coney Island,* que estaba en Guayama. Fuí a pagar por otro señor, pero el *Coney Island* no era mío. Yo solamente soy el manager, tengo un salario. El manager o representante soy yo porque el otro no conoce el negocio y yo le enseño. Se compone el Coney Island ese de diferentes aparatos: la machina, la estrella, picas y otros aparatos; y de todo eso yo soy el manager. Todos están bajo mi dirección. El me paga cincuenta pesos semanales.

"Repreguntado por el Lcdo. Martínez contesta: El dueño de ese Coney Island es Fritz Warner. Cuando el Coney Island actuaba ahí, estaba aquí mismo, en la población. Estaba él cuando los aparatos funcionaban, dentro de los aparatos; yo soy como un secretario, como él no conoce los negocios él dice que yo le ayude hasta que él conozca un poco y él no conoce muy bien ese negocio; es el primer año que él compró los aparatos y yo tengo doce de experiencia; pero él estaba ahí en el mismo sitio y la misma noche estaba ahí.

"Repreguntado por el Lcdo. Domínguez contesta: Cuando hay que arreglar los aparatos, algunas veces él va solo y otras veces él me manda a mí. Cuando él no conoce él me manda a mí; cuando conoce va él. Fuí a la Alcaldía a pagar la luz porque me mandó allá, fuí a donde Girod porque me mandó allá.''

Siguió declarando el demandado como su propio testigo y explicó más detalladamente su negociación con Warner,

presentando tres documentos, a saber: uno privado cuyas firmas fueron autenticadas el 15 de marzo de 1924 ante notario público, por el que el demandado aparece vendiendo a Fritz Warner, una machina (carrusel) de caballitos; otro privado autenticado también ante notario creditivo de la venta en 2 de marzo de 1924 por el demandado al dicho Warner de una ola giratoria, y una escritura otorgada en Aguadilla el 2 de junio de 1924 ante el notario público J. B. García Méndez, ratificando las ventas a que se refieren los documentos anteriores.

Refiriéndose a estos extremos el juez sentenciador en su relación del caso y opinión dijo:

"De la evidencia presentada aparece que a la fecha del accidente la propiedad del carrousell no pertenecía al demandado y sí a un tal Warner quien lo había adquirido de aquél hacía algún tiempo; y fundado en tal hecho se interesó la desestimación de la demanda.

"Se alega por el demandante que tanto el dueño como el manager responden de las consecuencias del accidente; esto es verdad pero en cierto modo; el principal responde de los actos de su empleado pero nunca la acción puede dirigirse contra éste que al actuar en nombre de aquél no asumía responsabilidades propias sino en nombre del principal o la persona por la cual actuaba."

En su alegato el apelante sostiene que la corte erró al admitir la prueba documental indicada y en todo caso al no cumplir con el deber que le imponía el art. 75 (debe ser el 74) del Código de Enjuiciamiento Civil al no resolver definitivamente el pleito trayendo al mismo como demandado a Warner.

[1] Argumentando el primer error el apelante sostiene que "el demandado en este caso, fué la empresa, representada por su dueño o manager" y que los documentos admitidos sólo tendían a introducir confusiones.

La demanda comienza así: "Martirián Funtané Cintrón, demandante, vs. Joel Goldberg, dueño o Manager del *Coney Island Amusement Shows.*" Ya indicamos que en la demanda se alega que el demandado era el dueño o represen-

tante de un espectáculo conocido con el nombre de *Coney Island*. No aparece, pues, demandada la empresa sino el demandado como dueño o representante de la misma. Y siendo ello así, los documentos que demostraban de modo terminante que el demandado no era el dueño, fueron debidamente admitidos.

[2, 3] En cuanto al efecto que pueda tener la alegación de que el demandante era el representante del espectáculo y la prueba aportada en relación con la misma, será considerado al estudiar el segundo error que envuelve la interpretación del artículo 74 de nuestro Código de Enjuiciamiento Civil. Dicho artículo en lo pertinente, dice:

"La Corte podrá resolver cualquier controversia entre las partes, siempre que fuere posible hacerlo sin perjudicar los derechos de otros, o salvando éstos; pero cuando no se pueda llegar a una completa resolución de la controversia sin la presencia de otras personas, la Corte deberá entonces disponer la comparecencia de éstas. . . ."

John Norton Pomeroy en su obra *"Code Remedies,"* expone:

"Como la teoría en equidad sobre la cuestión de partes fué adoptada en el nuevo sistema de enjuiciamiento, era natural esperar alguna disposición para hacer cambios en las partes, ya añadiendo ya quitando. De acuerdo con esta expectación los códigos todos contienen secciones que prescriben reglas más o menos elaboradas y explícitas para guiar a las cortes en este asunto. Los códigos siguen dos distintos tipos. Uno es la mera expresión en forma estatutoria de la doctrina relativa a la inclusión de partes adicionales que prevaleció largo tiempo en las cortes de equidad, añadiéndose una disposición que permite a la corte ordenar sumariamente una intervención mediante moción en casos específicos, evitando así la demora y trabajo de una acción formal de intervención. El código de New York adoptó esta forma y ha sido seguida, a veces con ligeras variantes pero a menudo con exactitud literal, por la mayor parte de los códigos o leyes de práctica de los Estados. El otro tipo es enteramente distinto. Descarta enteramente todas las antiguas nociones; va mucho más lejos que las concesiones de las cortes de equidad; crea, bajo el título de 'Intervención' una nueva divi-

sión del enjuiciamiento.   La noción fundamental es que la persona esencial y realmente interesada en el resultado de un litigio—la persona que tendrá derecho al beneficio final de una sentencia—puede en cualquier tiempo, en cualquier estado del caso, intervenir y ser hecha parte, de modo que toda la controversia posible termine en una acción y por una sola sentencia.   Los Estados que han adoptado este tipo con su mayor alcance son Iowa y California, y su ejemplo ha sido seguido en un número de otros Estados.''   Pomeroy's Code Remedies, 404–5.

Sigue el autor estudiando la materia y, en la página 411, expresa:

''Si una completa determinación de la controversia no puede hacerse sin la presencia de otras partes, la corte *debe* hacer que se incluyan como partes.''

Luego, en la página 413, completa su pensamiento así:

''Este deber perentorio no surge a menos que las condiciones del estatuto estén cumplidas, y la corte no ordenará la inclusión de nuevas partes demandadas contra la voluntad del demandante a menos que sean realmente necesarias en el sentido ya definido.   De modo que, en una acción contra los endosantes de un pagaré, el demandante no será obligado a incluir al librador como co-demandado. Ni ha de ordenarse la inclusión de una nueva parte meramente con el fin de arreglar cuestiones entre dicha parte y el demandado en las que el demandante no tiene interés.   El estatuto no permitirá al demandante incluir un nuevo demandado *sin cuya presencia no podría obtener sentencia* pues entonces no tendría causa de acción. Tal procedimiento sería en efecto el comienzo de una nueva acción, y la disposición estatutoria asume que en la acción pendiente existe un derecho a recobrar contra los demandados originales.   Al demandante no puede permitírsele, so pretexto de incluir partes adicionales, comenzar una nueva acción cuando hubiera fracasado enteramente en la primera por no haber presentado una buena causa de acción.''

Aunque el autor en la división que establece al principio coloca a California entre los Estados que han adoptado el tipo de mayor alcance y nuestro Código sigue a California, y aunque sus conclusiones con respecto a que no cabe interpretar el estatuto en el sentido de permitir que se use para

comenzar nuevas acciones, sólo están sostenidas por casos de Nueva York, nos parece el criterio tan lógico que será aceptado como norma por este tribunal. Nada en contrario se ha citado ni hemos podido encontrar en la jurisprudencia de California en el estudio que de la misma hemos llevado a efecto. Quizá sea conveniente recordar además que esta corte en el caso de *J. Ochoa & Hno.* v. *José González Clemente & Co.*, decidió que "Cuando ejercitando una causa de acción que tiene su representado, el agente no la establece a nombre de aquél como demandante sino a su propio nombre, el defecto no es de partes sino de falta de causa de acción y la demanda no es susceptible de ser enmendada." 29 D.P.R. 1015.

[4] ¿Qué responsabilidad, según la demanda y la prueba, tenía el demandado?

Cyc., resumiendo la jurisprudencia, dice:

"Cuando el acto de un sirviente o agente es uno que él real o presuntivamente sabe es torticero, él es personalmente responsable. 'El que comete un acto ilegal o un acto legal en forma ilegal y daño positivamente agresivo a otro no puede evadir la responsabilidad por el mismo por el fundamento de ser agente de otro.' Sin embargo, si la persona es meramente el instrumento inconsciente de otros al cometer el daño, no es personalmente responsable por las consecuencias, como cuando un sirviente o agente recibe bienes de quien él tiene derecho a creer es el dueño de ellos y meramente los transporta a otra persona. Ni es responsable el agente o sirviente a una tercera persona por daños causados por la mera omisión de cumplir debidamente un deber impuéstole por su patrono. La responsabilidad en tal caso es solamente del patrono." 38 Cyc. 470–71.

Entre los casos que apoyan el texto figura el de *Van Antwerp* v. *Linton,* 89 Hun. (N.Y.) 417, 35 N. Y. Suppl. 318 (confirmado en 157 N.Y. 716, 53 N.E. 1133), en el que se decidió que—

"En un caso en que los demandados fueron nombrados para constituir un comité de la junta de directores de una corporación para poner ciertos terrenos en condiciones para una partida de balompié, y el demandante recibió daños debido a construcción defec-

tuosa de las tribunas, se resolvió que la negligencia constituía una falta de cumplimiento y no envolvía la comisión en forma ilegal de un acto legal y que los demandados no eran responsables.''

Aplicando esos principios a los hechos tales como resultan de las alegaciones y las pruebas, es necesario concluir que el demandado no era responsable, y si no lo era, ni tenía poder para asumir la representación del verdadero responsable, el dueño, en el sentido de que un procedimiento seguido contra él pudiera entenderse seguido contra el dueño, es evidente que el demandante jamás llevó a la corte una verdadera parte demandada a la cual pudiera agregarse otra necesaria para ultimar debidamente la cuestión envuelta. Si el juez hubiera ordenado la citación de Warner, de hecho hubiera ordenado el comienzo de un nuevo pleito, y ya hemos visto que no es ese el espíritu ni el alcance del estatuto.

Habiendo llegado a la conclusión que antecede, no cabe entrar a estudiar y a resolver el caso en sus méritos, debiendo simplemente *confirmarse, por tal motivo, la sentencia apelada.*